922 F.2d 895
 59 USLW 2461, 24 Collier Bankr.Cas.2d 600,
21 Bankr.Ct.Dec. 393,
Bankr. L. Rep. P 73,777
 In re MEDOMAK CANNING, Debtor.
Dennis G. BEZANSON, Trustee, Plaintiff, Appellee,
v.
BAYSIDE ENTERPRISES, INC., et al., Defendants, Appellees.
Cara Corporation, Cross-Claim Plaintiff, Appellant.
In re MEDOMAK CANNING, Debtor.
Dennis G. BEZANSON, Trustee, Plaintiff, Appellee,
v.
BAYSIDE ENTERPRISES, INC., et al., Defendants, Appellees.
Acme Engineering Company, Cross-Claim Plaintiff, Appellant.
 Nos. 90-1311, 90-1312.
 United States Court of Appeals,
First Circuit.
 Heard Aug. 1, 1990.
Decided Dec. 28, 1990.
Rehearing Denied Jan. 24, 1991.
 
 Gregory W. Swope with whom Sheehan, Phinney, Bass & Green, P.A., Manchester, N.H., was on brief, for Cara Corp.
 Christopher Kennedy with whom Sidney St. F. Thaxter and Curtis Thaxter Stevens Broder & Micoleau, Portland, Me., were on brief, for Acme Engineering Co.
 Stuart W. Tisdale, Jr., with whom Richard E. Poulos and Poulos, Campbell & Zendzian, P.A., Portland, Me., were on brief, for defendants, appellees.
 Before CAMPBELL and SELYA, Circuit Judges, and BOWNES, Senior Circuit Judge.
 LEVIN H. CAMPBELL, Circuit Judge.
 
 
 1
 Appellants Acme Engineering Company ("Acme") and Cara Corporation ("Cara") appeal from an order of the district court affirming the bankruptcy court's dismissal of their cross-claim against Bayside Enterprises, Inc. ("Bayside") and Poultry Processing, Inc. ("PPI"). 111 B.R. 371. The bankruptcy court ruled that appellants' cross-claims asserting equitable subordination against appellees were barred by the doctrine of res judicata, because the Chapter 7 Trustee in bankruptcy for Medomak Canning Company ("Medomak") had earlier compromised the estate's equitable subordination claims in a court-approved settlement. We affirm.
 
 I. FACTS AND PROCEDURES BELOW
 
 2
 Medomak is the debtor in a bankruptcy proceeding under 11 U.S.C. Chapter 7. Along with other asserted interests in Medomak's assets, Bayside and PPI held mortgages on certain of its real property. Acme possessed a mechanic's lien on the same property, but as a result of its former attorneys' failure to name Bayside and PPI as defendants in the state court action establishing the lien, Acme's mechanic's lien was junior to the mortgages of Bayside and PPI. Funds from the court-approved sale of the property were sufficient only to satisfy Bayside's and PPI's mortgage indebtedness, rendering Acme's claim unsecured.[1] Cara obtained a post-judgment attachment lien on the same property in a state court action against Medomak and filed a secured proof of claim. As the lien was obtained within the 90-day preference period, however, it appears to be avoidable. 11 U.S.C. Sec. 547(b)(4)(A). Cara concedes in any event that the lien could not be satisfied from the sale proceeds of the property if Bayside's and PPI's mortgages were given effect.
 
 
 3
 Central to this dispute is a compromise agreement (the "Compromise") reached between the Trustee and the appellees. This agreement was embodied in a Joint Application for Approval of Compromise that was presented to the bankruptcy court for consideration and ultimately approved by it. The Compromise agreement states: "The Trustee, Bayside and PPI claim that all of the above alleged secured claims [including the Acme mechanic's lien and the Cara attachment but excluding Bayside's and PPI's mortgages] are unsecured based on the value of the collateral securing the said claims." Pursuant to the settlement, Bayside and PPI agreed to pay a lump sum to the estate and to voluntarily subordinate their remaining claims (other than the mortgages) to all other allowed unsecured claims. In exchange, the Trustee agreed to release "any and all" of his own claims against Bayside and PPI.[2]
 
 
 4
 The Compromise further provided that Bayside's and PPI's mortgages would be allowed as a secured claim and paid "upon entry of a final order by the bankruptcy court determining the validity, extent, priority, allowability and/or amount of all the claimed secured claims specified in Paragraphs III. E and F below." Among these were the Acme mechanic's lien and Cara attachment. Paragraph F repeats that the Trustee shall file a complaint to determine the validity, nature, extent, priority, allowability, and/or amount of claims, including those of Acme and Cara.
 
 
 5
 Pursuant to Bankruptcy Rule 9019, the bankruptcy court notified Acme and Cara of the hearing seeking the court's approval of the Compromise. Cara did not appear at the hearing nor did it object to the Compromise. Acme appeared and filed a written objection stating that, to the extent the application for approval of the Compromise assumed that Bayside's and PPI's claims had priority over Acme's claims, Acme objected:
 
 
 6
 on the grounds that Acme has consistently maintained and continues to maintain that its claims have priority over the claims of Bayside and PPI.
 
 
 7
 Acme claims priority over Bayside and PPI in that Acme holds a mechanics lien on the real property of Medomak Canning. (See Exhibit A.) ... Because of Acme's claim of priority to the real property it is inappropriate for the bankruptcy court to approve the ... Compromise until the application is clarified to reflect that the priorities of all parties are to be determined via the Trustee's complaint.
 
 
 8
 While Acme thus claimed priority over Bayside and PPI, and sought a hearing on priorities upon the Trustee's complaint, Acme did not then assert equitable subordination as the basis for its claimed senior status but rather relied solely upon its mechanic's lien. The bankruptcy court overruled Acme's objection but stated in the order approving the Compromise:
 
 
 9
 ... Acme Engineering Company's objection is addressed favorably by [the Compromise] in that [The Compromise] does not determine the said creditors' priority or right to proceeds of the sale of the Debtor's real and personal property; rather the validity, nature, extent, priority, allowability and amount of the claim of the various creditors shall be subsequently determined in an action to be brought by the Trustee.
 
 
 10
 After the bankruptcy court so clarified the Compromise terms, Acme withdrew its objection.
 
 
 11
 As provided in the Compromise, the Trustee subsequently commenced this separate adversary proceeding seeking determination of the various creditors' claims. Cara moved to add appellees Bayside and PPI as cross-claim defendants, for the purpose, Cara said, of complaining that Bayside's and PPI's claims should be equitably subordinated to Cara's claim. Appellees did not object to this motion, and it was granted. The Trustee's motion for an order authorizing establishment of escrow for the benefit of Cara's and Acme's disputed claims was also granted. Cara then filed its complaint against Bayside and PPI, stating its claim for equitable subordination. Acme similarly cross-claimed against appellees, asserting that Bayside and PPI were equitably estopped from claiming that their mortgages had priority over Acme's interest. Acme's subsequent motion to amend its cross-claim to add an equitable subordination claim was allowed to the extent it related to the establishment of a valid secured lien with priority over the valid secured claims of appellees, but was denied to the extent Acme sought to recover as an unsecured creditor.
 
 
 12
 Thereafter, appellees moved for dismissal of appellants' equitable subordination claims, asserting that the bankruptcy court's order approving the Compromise was res judicata on the equitable subordination claims. The bankruptcy court considered and granted the motion to dismiss as a motion for summary judgment pursuant to Fed.R.Civ.P. 12(c).[3] The district court affirmed.
 
 II. THE DISTRICT COURT'S OPINION
 
 13
 In upholding the bankruptcy court's determination that the Compromise and Order of Approval were res judicata as to Acme and Cara's subsequent equitable subordination cross-claims, the district court reasoned as follows:
 
 
 14
 (1) The court found that the Joint Application and Compromise indicated:
 
 
 15
 the Trustee had investigated potential claims of preferential transfers, fraudulent transfers, and equitable subordination against Appellees, but concluded that it would not be in the best interest of the estate to bring those claims against Appellees....
 
 
 16
 (Emphasis supplied.) For this reason, and also because the Trustee released "any and all claims" he had against Bayside and PPI, the court ruled:
 
 
 17
 The Joint Application, by its own terms, indicates that the Trustee released any potential claims of equitable subordination which [the Trustee] may have had against Appellees.
 
 
 18
 (2) As a consequence, the court decided that "the [Compromise] agreement did not reserve in the Trustee (or parties in privity with the Trustee) the right to bring later claims of equitable subordination." Rather,
 
 
 19
 ... the Joint Application and subsequent order of approval entered by the Bankruptcy Court reserved for future litigation only the issue of the legal priority of all the creditors' claims to the estate.
 
 
 20
 (Emphasis retained.)
 
 
 21
 (3) The district court found further support for the above interpretation in the character of Acme's only filed objection to the Compromise. The objection, the court noted, rested "not on the basis of the equitable reshuffling of priorities, but on the ground that its mechanic's lien had legal priority over Appellee's secured claims." The district court went on to explain:
 
 
 22
 Acme was concerned that the compromise not be construed to conclusively establish that Appellees' liens had legal priority over its own liens; it sought assurance that Appellees would be parties in the later action to determine the priority of all claims to the bankruptcy estate.... Acme now concedes that absent an equitable reordering of priorities, its mechanic's lien is junior to those of Appellees because it neglected to name Appellees in the state court action to perfect the mechanic's lien.
 
 
 23
 The district court noted that in the hearing prior to the bankruptcy court's entry of its order approving the consent agreement, Acme's counsel:
 
 
 24
 gave no indication that it sought to obtain a superior position through an equitable reordering. Acme specifically asked the Bankruptcy Court to clarify the clause reserving for future litigation the relative priorities of all claimants to the property of the bankruptcy estate. Acme withdrew all objections to the compromise "to the extent that our superior position is to be determined at a later date".... The Bankruptcy Court ordered that Acme review the order approving the compromise such that "wording satisfactory to [Acme] is included in the form of order allowing the compromise" ... Nowhere in the Joint Application or the order approving the compromise is there an indication that the claim of equitable subordination was reserved for future litigation. This Court finds that the claim of equitable subordination was released by the Trustee, thus precluding Appellants from reasserting it in a new action.
 
 
 25
 (4) The district court then rejected Acme's and Cara's arguments that they were not bound by the consent agreement because they were not parties to it nor to the underlying litigation it purported to settle. The court suggested, first, that Acme and Cara were in privity with the Trustee, who, acting for all of the estate's creditors, "was the proper party to seek equitable subordination." Since in the Joint Application the Trustee relinquished the equitable subordination claim, and since the Trustee was Acme's and Cara's "representative," they "are barred by res judicata from reasserting any such claim against Appellees." Second, to the extent Acme's and Cara's individual interests diverged from the Trustee's, they were protected by being allowed to object to the consent agreement under Bankruptcy Rule 9019. The court recognized that Acme and Cara might not fit within the concept of preclusion by representation because there might be such a divergence of interest between the Trustee and them that the Trustee could not fairly represent them. See Restatement (Second) Judgments Sec. 42(1)(d). Even so, however, the court believed that their receipt of notice, and their opportunity to object and participate in the hearing on the Compromise, as well as their right thereafter to appeal under 28 U.S.C. Sec. 158(c) from the bankruptcy court's order approving the Compromise, sufficed to render the Trustee's action res judicata, barring Acme and Cara from later suing for equitable subordination. The district court pointed out that Cara, although notified, never objected or appeared prior to the bankruptcy court's approval of the Compromise, and did not thereafter appeal from the approval. Acme, on the other hand, did object and appear; but although its objection was expressly overruled, did not appeal. Moreover, its objection was never based upon a contention that it be allowed to reorder the priority of claims against the estate on equitable grounds, but rather was limited to the legal priority allegedly provided by its mechanic's lien.
 
 The district court concluded:
 
 26
 In sum, this Court holds that the Bankruptcy Court correctly concluded that the Trustee released any claim he may have had against Appellees based on equitable subordination.... with the exception of an action to determine the priorities of the claims of all the creditors of the estate. The action reserved by the consent agreement does not allow the Trustee or Appellants [Acme and Cara] to bring a claim of equitable subordination. The Order approving the Joint Application of Compromise is res judicata barring appellants from reasserting a claim of equitable subordination against Appellees.
 
 III. ARGUMENTS ON APPEAL
 
 27
 Acme and Cara make three arguments on this appeal: (1) Acme and Cara were not parties nor in privity with the Trustee or any other parties to the Compromise and therefore the Compromise cannot be res judicata as to them; (2) the Compromise explicitly reserved Acme's and Cara's right to bring claims of equitable subordination against Bayside and PPI; and (3) Bayside and PPI waived their defense of res judicata. We address each in turn.
 
 Privity
 
 28
 "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980) (citing Cromwell v. County of Sac, 94 U.S. 351, 352, 24 L.Ed. 195 (1876)). Generally, a court-approved settlement receives the same res judicata effect as a litigated judgment, and we think that principle is appropriately applied here. Arrieta-Gimenez v. Arrieta-Negron, 859 F.2d 1033, 1041 (1st Cir.1988), certified question answered, 551 So.2d 1184 (Fla.1989), summary judgment granted, 896 F.2d 16 (1st Cir.1990) (per curiam).
 
 
 29
 In this case, the district court found, we think correctly, that the Trustee intended in the Compromise agreement to give up all equitable subordination claims that he had, on behalf of the estate, against Bayside and PPI. The question is whether, in all the circumstances, the Trustee was in privity with Acme and Cara, so as properly to be viewed as their "representative." A trustee in bankruptcy is a fiduciary representing the estate and creditors. In re Thu Viet Dinh, 80 B.R. 819, 822 (Bankr.S.D.Miss.1987). In order efficiently to administer the estate, a trustee's court-approved settlement must have finality, and settling parties must be assured that those the trustee represents will not relitigate settled claims. Such a result is implicitly recognized in Bankruptcy Rule 9019, which requires notice to interested parties prior to approval of such a settlement.
 
 
 30
 Acme and Cara insist, and it is undisputed, that they were not themselves parties and signatories to the Compromise agreement itself. The Trustee, however, was a party and signatory, and the question is the res judicata effect on Acme's and Cara's subsequently-filed equitable subordination claims of his surrender of all claims of that nature, bearing in mind that Acme and Cara were properly notified under Bankruptcy Rule 9019, prior to the court's being asked to approve the Compromise. Acme, indeed, appeared and initially objected to the Compromise; and the bankruptcy court, thereafter, approved it.
 
 
 31
 We agree with the Fifth Circuit that privity may be established by identification of interests, even where representation of those interests is not authorized. The Trustee could bind appellants in compromising equitable subordination claims against appellees based upon such identification of interests between the Trustee and appellants that the Trustee was acting as their virtual representative. Meza v. General Battery Corp., 908 F.2d 1262, 1267 (5th Cir.1990); Aerojet-General Corp. v. Askew, 511 F.2d 710, 719 (5th Cir.), reh'g denied, 514 F.2d 1072, cert. denied, 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137, reh'g denied, 423 U.S. 1026, 96 S.Ct. 470, 46 L.Ed.2d 400 (1975). See also United States v. Bonilla Romero, 836 F.2d 39 (1st Cir.1987), cert. denied, 488 U.S. 817, 109 S.Ct. 55, 102 L.Ed.2d 33 (1988) (privity can be established for purposes of collateral estoppel by virtual representation). For purposes of determining the applicability of res judicata here, identity of interests is equivalent to privity.
 
 
 32
 Appellants assert that they are secured creditors, that their interests are in conflict with those of the Trustee, and that therefore the Trustee could not compromise their equitable subordination claims. See Nevada v. United States, 463 U.S. 110, 135 & n. 15, 103 S.Ct. 2906, 2920-21 & n. 15, 77 L.Ed.2d 509, reh'g denied, 464 U.S. 875, 104 S.Ct. 210, 78 L.Ed.2d 185 (1983). They argue that while the Trustee, as custodian of the secured creditors' collateral, is their fiduciary, his "primary duty is to the unsecured creditors rather than to the secured creditors." In re Thu Viet Dinh, 80 B.R. at 822. See also In re Lundborg, 110 B.R. 106, 109 (Bankr.D.Conn.1990).
 
 
 33
 There are basic flaws in appellants' argument. As already noted, the Bankruptcy Code provides that, "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim." 11 U.S.C. Sec. 506(a). Acme concedes that its mechanic's lien is, legally speaking, junior to the appellees' secured claims. The proceeds from the sale of the property securing the claims were clearly insufficient to satisfy Acme's lien. Similarly, Cara stipulated with the Trustee as follows:
 
 
 34
 That the claim of Cara against the Trustee and the Debtor's estate constitutes a general unsecured claim, notwithstanding the pre-Petition judicial attachment obtained by Cara on January 3, 1986. Said claim is to be deemed unsecured pursuant to the provisions of 11 U.S.C. Sec. 506(a) and Sec. 506(d). However, the Trustee agrees that, should Cara prevail in the prosecution of its claims against [appellees] ... its claim shall, in fact, become a secured claim entitled to full payment....
 
 
 35
 Plainly, therefore, Acme and Cara have at all relevant times to date been unsecured creditors, notwithstanding the contingent possibility that they might persuade a court to equitably reorder their claims in such a way as to achieve the secured status to which the law currently gives them no right.[4]
 
 
 36
 As unsecured creditors, appellants could not in these circumstances evade the responsibility of looking to the Trustee in the first instance as their fiduciary and representative to vindicate their interests, including even their interest in pursuing equitable subordination beyond the hope of receiving a pro rata distribution of the estate along with other general unsecured creditors. The Trustee is ordinarily the appropriate party to seek equitable subordination on behalf of the estate and unsecured creditors. Generally, an unsecured creditor may assert equitable subordination only where the Trustee has refused to do so and the court grants an unsecured creditor leave to contest a claim. See In re Parker Montana Co., 47 B.R. 419, 421 (D.Mont.1985); In the Matter of Video Cassette Games, Inc., 108 B.R. 347, 349 (Bankr.N.D.Ga.1989). While appellants, as discussed below, were entitled to pursue their special interests, they also had a duty, as prima facie unsecured creditors, to pursue their individual equitable subordination claims in an orderly fashion within the context of the Trustee's proposed settlement with the secured creditors. Were we to hold otherwise--were we to agree with appellants that the mere contingent possibility of obtaining a secured position by means of an equitable reordering entitled them to ignore the Trustee and bypass the court proceeding to approve the Compromise--we would create a precedent that could complicate and extend bankruptcy proceedings to the detriment of all creditors, by fostering a piecemeal approach to interrelated equitable claims that, more sensibly and efficiently, should be disposed of together.
 
 
 37
 This is not to deny, as the district court recognized, that appellants' interests may in certain respects be distinguished from, and may perhaps even conflict with, those of the Trustee and the other general creditors in view of Acme's and Cara's purported lien-holding status. While under legal principles these liens are impotent to lift appellants from unsecured to secured status, we accept that it may be possible to imagine some equitable reordering that could put them ahead of the other creditors. See note 4, supra. We also recognize that in different circumstances creditors may sometimes litigate equitable subordination claims separately. Appellants, however, received a full and fair opportunity to argue their special equities to the bankruptcy court in opposition to its approval of the settlement, having received notice of hearing and an opportunity to object under Bankruptcy Rule 9019. Had appellants presented their equitable claims in opposition to the settlement and lost, they could have appealed the approval of the Compromise to the district court. 28 U.S.C. Sec. 158. Given the fact that the Trustee surrendered all equitable subordination claims against Bayside and PPI in the court-approved Compromise, and given that appellants had an opportunity to object and present any unique equitable claims of their own in opposition to the Compromise, they are now barred from raising their own equitable subordination claims in this later proceeding. See In re Dominelli, 820 F.2d 313, 217 (9th Cir.1987).[5]
 
 
 38
 We note, as did the district court, that Acme and Cara entirely failed to identify the equitable claims they now seek to pursue when the bankruptcy court was reviewing the Compromise agreement. Cara did not then object to the settlement at all. Acme initially did object, asserting the priority of its claim over Bayside's and PPI's claims, and its uncertainty as to whether such priority would be determined in the complaint which the Compromise agreement provided would later be filed by the Trustee. However, Acme only claimed priority over Bayside and PPI "in that Acme holds a mechanics lien on the real property of Medomak Canning." Acme made no mention of an equitable claim nor did it attempt to delineate those special equities that might entitle it to prevail over Bayside and PPI and the other creditors whose claims might be affected. The bankruptcy court addressed what it understandably took to be Acme's sole concern, i.e., its claim of legal priority, finding that the priority would be determined in the complaint to be filed by the Trustee, and Acme withdrew its objection. Acme thus at no time raised its equitable subordination claim as an objection to the settlement; rather it unambiguously asserted a legal basis for its priority in its objection. Though they had adequate opportunity to do so, neither Cara nor Acme provided the bankruptcy court with any reason to believe they had an interest diverging from other general creditors (other than Acme's mechanic's lien) which might render approval of the Compromise inappropriate.
 
 
 39
 We hold, therefore, that the district court did not err in concluding that, in a system where notice and hearing safeguards were provided that would have allowed them to raise and seek to preserve their own special equitable claims (distinct from those of other general creditors), Acme and Cara were "represented" by the Trustee, with whom they were in privity. They were, therefore, bound by the bankruptcy court's approval of the Compromise.
 
 The Compromise Agreement
 
 40
 Appellants next contend that, even if they are held to be in privity with the Trustee and thus bound by the settlement, the Compromise itself reserves their right to pursue claims of equitable subordination against appellees. They argue that the provision requiring that the bankruptcy court determine the "priority" of appellants' claims upon a complaint to be filed by the Trustee includes, on its face, equitable subordination claims on their behalf. Appellants' right to assert equitable subordination must rest, however, upon the shaky proposition that the Trustee reserved for himself the right to assert the very same claims.[6] The bankruptcy court and district court found that the Trustee did not do so. The district court emphasized that the Compromise's introductory paragraph indicates that the Trustee specifically investigated potential equitable subordination claims against appellees, and concluded:[T]he settlement proposed herein is beneficial to the Estate when considering the costs, expenses, and risks of further litigation.... Costs ... to properly audit and then litigate issues of preferences, fraudulent transfers and equitable subordination of secured claims could be substantial....
 
 
 41
 The Trustee, moreover, agreed to release "any and all claims" other than specified ones against Bayside and PPI. It, therefore, seemed clear to the court, as it does to us, that the Trustee compromised whatever equitable subordination claims against Bayside and PPI he may have had, leaving only claims of legal priority to be litigated in the subsequently filed complaint.
 
 
 42
 Appellants contend that a determination of "priority" and "validity" of secured claims necessarily includes resolution of claims of equitable subordination. Appellants cite numerous cases in which the words "priority" and "validity" are used in connection with equitable subordination claims. See, e.g., Wegner v. Grunewaldt, 821 F.2d 1317, 1319 (8th Cir.1987); In re N & D Properties, Inc., 799 F.2d 726, 731 (11th Cir.1986). Nevertheless, we agree with the district court that the Trustee, having plainly indicated that the settlement in which "any and all claims" against appellees were relinquished was beneficial to the Estate in light of the substantial costs of litigating equitable subordination claims, could not have intended to retain for himself the right to assert equitable subordination claims on behalf of appellants.
 
 
 43
 Acme concedes that the Trustee determined that it would not be worthwhile for him to pursue equitable subordination on behalf of unsecured creditors. Nonetheless, appellants contend that the Trustee did not reach such a conclusion on behalf of "secured" claimants such as Acme and Cara, and actually believed that the Compromise did not dispose of appellants' equitable subordination claims. But Acme and Cara were not holders of secured claims. See supra. Appellants' right to assert equitable subordination must rest on the theory that the Trustee reserved, explicitly or implicitly, the right to assert equitable claims. The appellants argue that, inasmuch as they are bound by the Trustee's Compromise, they may independently assert equitable subordination claims based upon the Compromise reservation. However, if the Trustee, as appellants' representative, did not himself retain equitable subordination claims, then appellants have no basis to assert those claims independently. As discussed above, the Trustee plainly did not intend to himself assert equitable subordination claims on behalf of appellants. The Trustee may have mistakenly failed to recognize that his compromise of these claims on his own behalf would preclude, through principles of res judicata, appellants' claims. Such a mistake, however, does not support appellants' contention that the Trustee reserved his own equitable subordination claims in the Compromise.
 
 Waiver
 
 44
 Appellants finally argue that appellees waived their right to assert res judicata as an affirmative defense to the equitable subordination claims. Acme contends that appellees waived the affirmative defense by failure to plead the defense in answering Acme's cross-claim, as required by Fed.R.Civ.P. 8(c), and the bankruptcy court abused its discretion by failing to recognize this argument. Acme contends that no exceptions to the pleading requirement apply here, as Bayside failed to raise the res judicata defense by answer, or when other opportunities to raise the defense were presented, such as when the Trustee escrowed funds to cover the claims, and when equitable subordination was discussed at a preliminary pretrial conference. In addition, Cara asserts that appellees waived the res judicata defense by failing to object to Cara's Motion for Leave to Add Third-Party Defendant, which explicitly sought leave to assert the equitable subordination claim. Even if appellees waived res judicata as an affirmative defense, a court on notice that it has previously decided an issue may dismiss the action sua sponte, consistent with the res judicata policy of avoiding judicial waste. United States v. Sioux Nation of Indians, 448 U.S. 371, 432, 100 S.Ct. 2716, 2749, 65 L.Ed.2d 844 (1980) (Rehnquist, J., dissenting); Holloway Construction Co. v. United States Department of Labor, 891 F.2d 1211, 1212 (6th Cir.1988). See also Commissioner v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948). Appellants' arguments, therefore, fail.
 
 
 45
 Affirmed. Costs to appellees.
 
 
 
 [1]
 Under 11 U.S.C. Sec. 506(a):
 An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.
 
 
 [2]
 The Compromise stated that the settlement was "beneficial to the Estate when considering the costs, expenses, and risks of further litigation.... Costs ... to properly audit and then litigate issues of preferences, fraudulent transfers and equitable subordination of secured claims could be substantial."
 The Compromise also settled the Trustee's claims against Bernard J. Lewis and Suzanne Lewis. These claims are not at issue here.
 
 
 [3]
 The bankruptcy court considered an order allowing the sale of assets free and clear of liens and the order allowing the Compromise, both of which were outside the pleadings
 
 
 [4]
 If appellees' claims are subordinated to those of appellants pursuant to 11 U.S.C. Sec. 510(c)(1), but the liens securing appellees' claims are not transferred to the estate pursuant to 11 U.S.C. Sec. 510(c)(2), then the appellants' security interests may be satisfied and they would become secured under 11 U.S.C. Sec. 506(a). We emphasize, however, that at this time no claims have been equitably subordinated and Acme and Cara have, therefore, not altered their current unsecured status. It might seem odd that Acme and Cara are unsecured creditors who, by virtue of potential equitable subordination, are not necessarily situated the same as all other general unsecured creditors. This, however, is the case any time a creditor is unsecured by operation of 11 U.S.C. Sec. 506(a). Wherever the property securing a claim is insufficient to satisfy a junior lien, equitable reordering of claims whereby a senior lien is subordinated to the junior lien would have the result of making the junior lien "secured." Acme had a fair opportunity to raise its equitable subordination claims to the bankruptcy court and Trustee prior to approval of the Compromise. We think that, under the circumstances of this case, Acme, otherwise unsecured by virtue of the junior status of its lien and section 506(a), should not be allowed to become secured and thereby evade the process whereby the Trustee settled equitable subordination claims, simply by asserting a contingent equitable subordination claim against a senior lienholder
 
 
 [5]
 In shareholder derivative actions and other class actions, the courts have emphasized the importance of notice in the application of res judicata to all members of the class. Fed.R.Civ.P. 23(c)(2). See Lewis v. Knutson, 699 F.2d 230, 240 (5th Cir.1983). These cases support our conclusion here that where notice provides interested parties with sufficient opportunity to present those interests to the court prior to approval of a settlement, res judicata may apply to them. This result is consistent with the res judicata policy of preventing repetitious lawsuits and promoting economy of judicial resources
 
 
 [6]
 The Trustee purported to, and could only settle his own claims and thereby the claims of those he represents. Appellants argue first that they are not bound by the Trustee's Compromise, but alternatively that, if bound, the Trustee, in fact, did not compromise the equitable subordination claims at issue. As representative and privy of the unsecured creditors (including appellants) anything which the Trustee compromised on his own behalf also binds those privies