# Supreme Court of the Navajo Nation

---

**In the Matter of the Estate of:**
**Goldtooth Begay #2**
**Decided August 11, 1992**

---

## OPINION

Before YAZZIE, Chief Justice, BLUEHOUSE and AUSTIN, Associate Justices.

Carol Kirk Retasket, Esq., Window Rock, Navajo Nation (Arizona), for the Appellant.

Opinion delivered by AUSTIN, Associate Justice.

This case involves a dispute over the ownership of a land use permit and a grazing permit, both formerly held by the deceased Goldtooth Begay. The appellant, as administrator of Begay's estate, contends that the Chinle Family Court committed reversible error by refusing to award the permits to Begay's heirs, as recommended in the appellant's final report to the family court. The issues before this Court revolve around a prior decision, also issued by the Chinle Family Court, quieting title to the permits against the appellant.

## I

On July 26, 1990, Lewis and Lorraine King filed suit in the Chinle Family Court to quiet title to grazing and land use permits formerly owned by Goldtooth Begay, who died in 1980. On December 18, 1990, the family court issued an order awarding transfer of the permits to the Kings. Shortly before the entry of the order, the heirs of Begay apparently sought to intervene in the quiet title action. The appellant contends that the final decision on the motion to intervene had not been made at the time this appeal was filed.

On January 10, 1991 — twenty-three days after the family court issued its quiet title decision — the appellant, Ruby B. Goldtooth, filed suit in the Chinle Family Court to administer the estate of Goldtooth Begay. On November 17, 1991, the appellant filed a final report wherein she assigned the property of Begay, including the permits at issue in the previously decided quiet title action, to his heirs. The family court approved all provisions of the appellant's final report on January 2, 1992, with the exception of the assignment of the permits. In its January 2nd order, the family court explained that the permits would not be awarded due to the court's prior quiet title decision settling their ownership.

In its hearing to consider the appellant's final report, at which no opposing

party was present, the family court judge directly inquired of the appellant's counsel whether the permits had been "subjected to a hearing previously." Transcript at 3. The appellant's counsel then admitted the existence of the quiet title decision. *Id.* In light of these circumstances, the family court judge apparently had prior knowledge of the existence and nature of the quiet title action and raised the doctrine of res judicata on his own to refuse to readjudicate ownership of the permits.

## II

The appellant contests on two grounds the family court's refusal to award the permits as suggested in her final report as administrator of Goldtooth Begay's estate:

1. The family court abused its discretion by raising on its own the affirmative defense of res judicata; and

2. The appellant's due process rights were violated by the family court's decision to honor the prior quiet title ruling and refusal to enforce all of the provisions of the appellant's final report.

## III

### A. Ability of Family Court to Raise Affirmative Defense of Res Judicata on Its Own

The principle of res judicata, which prohibits the same dispute from being legally resolved more than once, is firmly grounded in Navajo common law. This Court recently reaffirmed the doctrine in *Halwood v. Estate of Badonie*:

> When all have been heard [on a dispute] and the decision is made, it is respected. This has been the Navajo way since before the time of the present judicial system. The Navajo people did not learn this principle from the white man. They have carried it with them through history.

6 Nav. R. 16, 17 (1988) (quoting *Halona v. MacDonald*, 1 Nav. R. 189, 205 (1978)). Res judicata has also been formally codified in the Navajo Rules of Civil Procedure, where it is listed as an affirmative defense in a civil action. Nav. R. Civ. Pro. 8(c) (2) (H).

The Rules indicate that "affirmative defenses may be pleaded at the time an answer is filed." *Id.* There is no mention in the Rules, however, of whether or how a trial court may on its own raise an affirmative defense.

The general American rule regarding res judicata is that the doctrine may only be applied where the prior judgment, is either pleaded or offered in evidence. 46 Am. Jur. 2d *Judgments* § 580 (Supp. 1991); see also 50 C.J.S. *Judgments* § 822 (Supp. 1991). The United States Supreme Court in 1898 indicated that res judicata must be either pleaded or proven by a party to the suit in

a federal civil case. *United States v. Bliss*, 172 U.S. 463, 465 (1898). State courts have similarly restricted the use of res judicata. *See* 46 Am. Jur. 2d *Judgments* § 580 (Supp. 1991).

Despite the traditional American authority to the contrary, at least three federal circuit courts of appeals have recently ruled that trial courts may raise res judicata on their own in limited circumstances. All three circuits agree that res judicata may properly be raised by a trial court where the matter has been previously adjudicated by that same court. *In re Medomak Canning*, 922 F.2d 895, 904 (1st Cir. 1990); *Carbonell v. Louisiana Dept. of Health & Human Resources*, 722 F.2d 185, 189 (5th Cir. 1985); *Holloway Constr. Co. v. United States Dept. of Labor*, 891 F.2d 1211, 1212 (6th Cir. 1989). All three circuits also agree that the rationale for allowing such use of res judicata lies in the interest of judicial economy.

The appellant raises the counter-argument, however, that there may be an appearance of impropriety if trial court judges are allowed to assert res judicata on their own. This argument has some merit; judges must base their decisions on the cases as presented to them, not upon their independent research. But this Court believes that the appearance of impropriety is minimal where a trial judge merely takes note of the fact that a particular dispute has recently been resolved by the same court. A judge can hardly be expected not to recognize a dispute that the court has just settled, and the interest in avoiding needless and repetitive litigation justifies allowing judges to raise res judicata on their own in such circumstances. The family court below, therefore, did not abuse its discretion by taking judicial notice of the prior quiet title action that, under the doctrine of res judicata, bars further litigation of the ownership of the permits in dispute.

### B. Due Process Concerns

Just as embedded as res judicata in the Navajo common law is the principle of due process. Although due process of law is expressly guaranteed by section 3 of the Navajo Nation Bill of Rights, 1 N.T.C. § 3 (1986), this Court has noted that "[t]he concept of due process was not brought to the Navajo Nation by the Indian Civil Rights Act ... [nor] the Navajo Bill of Rights." *Begay v. Navajo Nation*, 6 Nav. R. 20, 24 (1988). Instead, due process is "fundamental fairness in a Navajo cultural context," *Navajo Nation v. Platero*, 6 Nav. R. 422, 424 (1991), and "strict standards of fairness and equity ... are inherent in the Navajo common law." *Navajo Nation v. MacDonald Sr.*, 6 Nav. R. 432, 448 (1991). Due process is found by synthesizing the principles of Navajo custom and government, *Billie v. Abbott*, 6 Nav. R. 66, 74 (1988), and it is applied "with fairness and respect." *Begay v. Navajo Nation*, 6 Nav. R. at 24.

This Court has held that Navajo due process ensures notice and an opportunity to be heard for all parties to a dispute, *Begay v. Navajo Nation, id.* at 24; entitles parties to representation, *Boos v. Yazzie*, 6 Nav. R. 211, 214 (1990); protects the right to seek political office, *Bennett v. Navajo Board of Election Supervisors*, 6 Nav. R. 319, 325 (1990); prevents the enforcement of ambiguous

statutes affecting personal and property rights, *id.* at 325-326; must be provided when the government takes private property without the owner's consent, *Dennison v. Tucson Gas & Electric Co.*, 1 Nav. R. 95, 98 (1974); and applies to juvenile proceedings to the same extent as to adult proceedings. *In the Matter of A.W.*, 6 Nav. R. 38, 43 (1988).

The appellant argues that her due process rights were violated because she was denied an opportunity to participate in the quiet title action, or, alternatively, because of the appearance of bias created by the family court judge's raising of res judicata on his own. As discussed above, the appellant's second argument is without merit. When a judge takes notice of a recent prior decision by the same court resolving the same dispute, the appearance of impropriety is minimal and outweighed by interests in judicial economy. While a significant appearance of bias on the part of a judge might constitute a violation of a party's due process rights, that appearance has not been demonstrated here.

As for the appellant's assertion that she was denied an opportunity to participate in the quiet title action, the fact that she admittedly filed a motion to intervene in that action renders any related due process arguments untenable. At no point did the family court deny the appellant participation in the quiet title suit. If, as the appellant contends, the family court failed to rule on the motion to intervene, the appropriate remedy was to apply for a writ of mandamus from this Court. The appellant failed to take this action, and thereby waived any right to claim a violation of due process for lack of opportunity to participate in the suit.

## IV

The decision of the family court is therefore AFFIRMED.