USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 96-1395 PETITIONING CREDITORS OF MELON PRODUCE, INC., Appellants, v. JOSEPH BRAUNSTEIN, TRUSTEE, ET AL., Appellees. ____________________ No. 96-1406 MELON PRODUCE, INC., Plaintiff - Appellant, v. PETER KARGER, Defendant - Appellee. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Edward F. Harrington, U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ and Boyle,* Senior District Judge. _____________________ _____________________  ____________________ * Of the District of Rhode Island, sitting by designation. Richard L. Blumenthal, with whom Peter L. Zimmerman and ______________________ ___________________ Silverman & Kudisch, P.C. were on brief for appellants. _________________________ Alan M. Spiro, with whom Andrew D. Cummings and Friedman & _____________ __________________ __________ Atherton were on brief for appellee Peter Karger. ________ ____________________ May 8, 1997 ____________________ -2- BOYLE, Senior District Judge. In this action, a BOYLE, Senior District Judge. _______________________ Bankruptcy Court decision allowed the unsecured claim of a creditor who had obtained a preferential transfer. The petitioning unsecured creditors appealed to the District Court the Bankruptcy Court's ruling that the unsecured creditor's claim should neither be denied nor equitably subordinated. The District Court dismissed the petitioning unsecured creditor's appeal for failure to prosecute. The petitioning unsecured creditors now claim that the District Court erred in dismissing their appeal. We affirm the Bankruptcy Court's determination. I. BACKGROUND I. BACKGROUND In August 1984, Karger, the unsecured creditor, loaned $632,000 to A. Pellegrino & Son, Inc. ("Pellegrino"). Melon Produce, Inc. ("Melon Produce") was incorporated to secure Karger's loans to Pellegrino, then in a proceeding under Chapter 11 of the Bankruptcy Code. Karger was Melon Produce's president and sole shareholder. The Bankruptcy Court approved Karger's loans, the transfer of three shares of stock in the New England Produce Center ("NEPC") and leasehold interests in three bays at NEPC from Pellegrino to Melon Produce for the purpose of securing Karger's loans, and Melon Produce gave a guaranty and security interest to Karger which included all "instruments" and "all . . . rights . . . to the payment of money" including a security interest in "all such assets hereinafter acquired." The three -3- bays and the shares of stock were not included in the security interests identified. On February 27, 1987, Melon Produce sold its three bays and shares of NEPC stock and paid Karger, its only secured creditor, $430,022.39 from the proceeds. Within a year of the payment to Karger, an involuntary proceeding against Melon Produce under Chapter 7 of the Bankruptcy Code was initiated by three unsecured creditors. On March 22, 1990, Joseph Braunstein, the Chapter 7 Trustee for Melon Produce ("Trustee"), brought an action against Karger in the Bankruptcy Court. The complaint alleged a preferential transfer and a fraudulent transfer of property of the estate under the Bankruptcy Code and a fraudulent transfer under Massachusetts state law.  The proceeding was transferred to the District Court. On January 8, 1991, the District Court granted the Trustee's motion for entry of final judgment as to Count I, the preference claim, and the Trustee's motion for assessment of prejudgment interest. The District Court entered final judgment on the merits, awarding damages on Count I in the amount of $430,022.39 plus pre-judgment interest in the amount of $29,838.39. All other counts were dismissed. On September 29, 1992, the final judgment was upheld upon appeal by this Court. In re Melon ____________ Produce, Inc., 976 F.2d 71 (1st Cir. 1992). _____________ The Trustee and Karger agreed to a Stipulation of Settlement on June 18, 1993. The Trustee had filed a post- judgment motion to require Karger to satisfy the indebtedness, -4- and sought the appointment of a Special Master for the purposes of taking possession of and selling shares of stock held by Karger in two unrelated corporations. The Trustee also had brought an action seeking to set aside as a fraudulent conveyance the interest of Karger's wife, Susan Karger, in certain real property held by her and Karger as tenants-by-the-entirety.  The stipulation stated that Karger had asserted and represented that he was unable financially to satisfy the judgment in full. In support of this assertion, Karger made certain financial disclosures to the Trustee, including submitting to a deposition by the Trustee and producing his tax returns and other work papers for review by the Trustee. Karger offered to pay the sum of $400,000, in satisfaction of the judgment and his and his wife's obligations and indebtedness to the Trustee. Due to the uncertainty with respect to Karger's financial situation and the question of Karger's ability to satisfy the judgment, and given the uncertainty with respect to the valuation of Karger's stock in the unrelated corporations, the Trustee agreed to seek the approval of Karger's $400,000 offer from the Bankruptcy Court according to the following terms: If the Settlement Amount is paid [by Karger] on or before the Settlement Date, the Trustee shall accept such payment in satisfaction of Karger's obligations, and the Trustee shall mark the judgment and any execution therefor 'satisfied' and return same to Karger. . . . If Karger pays the Settlement Amount by the Settlement Date, the Trustee shall not object to the allowance of Karger's unsecured claim in the amount of $400,000. . . . If this settlement is not -5- approved by the Bankruptcy Court or if an appeal is taken from an order approving this settlement and the order is stayed, then at the sole option of the Trustee, the Trustee may declare the Stipulation and settlement null and void. Thereafter, the Trustee may pursue his rights and remedies against Karger, including, but not limited to, the appointment of the Special Master to sell the [corporate] stock of Karger and the fraudulent conveyance action against Peter and Susan Karger.  The petitioning unsecured creditors filed an objection to the Trustee's motion to approve the settlement stipulation, seeking the denial of the Trustee's application for approval of the stipulation, or, in the alternative, the equitable subordination of Karger's unsecured claim to the claims of the other unsecured creditors. On July 22, 1993, the Bankruptcy Court heard the motion and approved the settlement. The unsecured creditors argued that the settlement should not be approved because the settlement provided that the Trustee would not object to Karger's unsecured claim of $400,000 and Karger was to pay less than the full amount of the preference judgment. The trustee advised the Bankruptcy Court that he did not wish to pursue equitable subordination of Karger's $400,000 claim because, having succeeded on the issue of preferential transfer, he did not want to go through ". . . another war." The Bankruptcy Court stated that 11 U.S.C. 502(d) permits the petitioning unsecured creditors to object to the allowance of the claim stating that "[y]ou could press that [claim for equitable subordination] even if the trustee rolls over and plays dead" and -6- that they, the objecting unsecured creditors, "can come in and ask for equitable subordination." The context of the court's statement is clear that objections to Karger's unsecured claim could be made later "and we'll have a hearing on that." The petitioning unsecured creditors did not appeal the Bankruptcy Court's order approving the settlement. On September 2, 1993, Karger paid the $400,000 settlement to the Trustee. The petitioning unsecured creditors then filed an objection to Karger's claim in Bankruptcy Court. On November 26, 1993, the petitioning unsecured creditors filed a Motion for Summary Judgment in Bankruptcy Court, arguing that Karger's unsecured claim should be denied pursuant to 11 U.S.C. 502(d), or, in the alternative, that Karger's claim should be equitably subordinated pursuant to 11 U.S.C. 510(c). The creditors argued that the claim should be disallowed because Section 502(d) states that "the court shall disallow any claim of any entity from which property is recoverable . . . unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable." The unsecured creditors argued that Karger's unsecured claim should be disallowed because the full amount of the judgment against Karger was in fact not paid. 11 U.S.C. 502(d). The unsecured creditors also argued that Karger's claim should be subordinated to their unsecured claims. This action would increase the dividend to the unsecured creditors other than -7- Karger. Section 510(c) authorizes the Bankruptcy Court to apply equitable subordination principles to claims. On December 28, 1993, the Bankruptcy Court denied the Motion for Summary Judgment and entered an order allowing Karger's unsecured claim in the amount of $400,000. See In re ___ _____ Melon Produce, 162 B.R. 386 (Bankr. D. Mass. 1993). The Court _____________ found that the petitioning unsecured creditors' Section 502(d) argument failed on the grounds that Karger had paid the full amount of the $400,000 settlement, that the Bankruptcy Court's order approving the settlement stipulation had adjusted the amount of the preference downward, and that "to rule otherwise would deprive the settlement of its essential vitality." As to the petitioning unsecured creditors' Section 510(c) argument, the Court found that "[t]he claims are primarily derivative from the same facts set forth in the Trustee's complaint seeking to avoid a fraudulent transfer. While the Trustee did not seek equitable subordination of Karger's claim . . . he might well have done so based upon the facts of the matter, and res judicata bars all available grounds for recovery, regardless of whether or not asserted." The Bankruptcy Court cited this court's opinion in Bezanson v. Bayside Enterprises, Inc. (In re Medomak Canning), ________ ___________________________________________________ 922 F.2d 895 (1st Cir. 1990), and concluded that "the previous settlement precludes the [petitioning unsecured creditors] from raising the issues of equitable subordination at this time."  The petitioning unsecured creditors then appealed to the District Court from the denial of Summary Judgment. On April -8- 7, 1994, the District Court affirmed the Bankruptcy Court's ruling on the issues relating to the effect of the failure to pay the full amount of the judgment against Karger and "remanded to the Bankruptcy Court the issue of whether [the petitioning unsecured creditors] should be allowed to object to Karger's claim on equitable subordination grounds." On July 5, 1995, the Bankruptcy Court issued a Memorandum Decision, in which it ruled that the petitioning unsecured creditors were precluded by the settlement from objecting to Karger's unsecured claim. In its Decision, the Bankruptcy Court resolved the uncertainties created by its utterance of July 22, 1993 and its published decision of December 28, 1993. The Court stated that its initial pronouncement on July 22, 1993, which stated that 11 U.S.C. 502(a) permits the petitioning unsecured creditors to object to the allowance of the claim and that the petitioning unsecured creditors could ask for a hearing on the equitable subordination issue, was in error. With the benefit of the motions for summary judgment, the Bankruptcy Court had come to the opposite conclusion in its published decision of December 28, 1993. In that decision, the Bankruptcy Court held the petitioning unsecured creditors were precluded from raising [the equitable subordination] issue, based primarily upon this court's opinion in In re Medomak Canning. ______________________ The Bankruptcy Court now upheld the December 28, 1993 decision, holding that In re Medomak Canning was controlling and that the ______________________ petitioning unsecured creditors were not entitled to pursue the -9- equitable subordination issue further. The court then cited Grella v. Salem Five Cent Savings Bank, 42 F.3d 26, 30 (1st Cir. ______ ____________________________ 1994), without discussion. On July 14, 1995, the petitioning unsecured creditors again appealed their equitable subordination claim to the District Court. The Bankruptcy Court gave notice to the parties of the appeal timetable on July 17, 1995. On September 5, 1995, the record for the case on appeal was assembled and transmitted to the District Court. Although the District Court did not issue a notice to the parties of the entry of the appeal on the docket, the petitioning unsecured creditors had actual knowledge for several months of the docketing of the appeal. Since the filing of the appeal, the petitioning unsecured creditors had been monitoring the status of the proceeding on the Court's computer- operated Pacer System. The petitioning unsecured creditors did not file and serve a brief within fifteen days after the entry of the appeal on the District Court docket, as required by Bankruptcy Rule 8009. On February 27, 1996, the District Court entered an order dismissing the appeal for the petitioning creditors' failure to prosecute the appeal. The petitioning unsecured creditors then filed a notice of this appeal to this Court. II. DISCUSSION II. DISCUSSION -10- Although this appeal initially presents the issue of whether actual as opposed to record notice triggers the 15 day period for the filing and service of an appellant's brief in the District Court, we choose to forego that issue and address the substantive underlying issues. While it is true that federal courts of appeal generally do not rule on issues not decided in the district court, we do have discretion to address issues not reached by the district court when the question is essentially legal and the record is complete. U.S. v. L.I. Kin-Hong, No. 97- ____ _____________ 1084, slip op. at 31 (1st Cir. Mar. 20, 1997) (citations omitted). Here, the substantive underlying issues are legal in nature and the record is complete. Furthermore, this cause has already involved the attention of this court on an earlier occasion. We address the substantive underlying issues in the hope that this litigation may sooner, rather than later, come to a conclusion. A. Disallowance of Claim A. Disallowance of Claim The petitioning unsecured creditors argue that Karger's claim should be disallowed, as Karger received a judicially determined preferential transfer and has not paid the amount for which he is liable because of the preferential transfer. Section 502(d) of the Bankruptcy Code governs the disallowance of claims. It reads as follows: (d) Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a -11- transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.  In 1992, this court held that Karger was the recipient of a voidable transfer. See In re Melon Produce, 976 F.2d at 76. ___ ___________________ The remaining issue, therefore, is to determine if Karger, as transferee, has paid over the amount for which he is liable under 11 U.S.C. 550. Petitioning unsecured creditors argue that Karger did not comply with the requirements of Section 502(d) because he did not pay the full amount of the judgment of $459,860.78 plus interest but rather settled the claim against him by means of a payment of a lesser sum, $400,000. The legal query presented appears to be unique since the parties have not cited nor have we found any authority which specifically addresses the precise issue presented here. Thus, we are left to the task of ascertaining the legislative purpose and intent, if possible, from the language employed by Congress. As we have stated previously, "'the task of interpretation begins with the text of the statute itself, and statutory language must be accorded its ordinary meaning.'" In Re: Juraj J. Bajgar, 104 ______________________ F.3d 495, 497 (1st Cir. 1997), quoting Telematics Int'l, Inc. v. ______________________ NEMLC Leasing Corp., 967 F.2d 703, 706 (1st Cir. 1992). Wherever ___________________ possible, statutes should be construed in a commonsense manner, avoiding absurd or counterintuitive results. U.S. v. Carroll, ____ _______ 105 F.3d 740, 744 (1st Cir. 1997) (citations omitted).  -12- The language of Section 502(d) of the Bankruptcy Code is not complex. A proof of claim must be disallowed unless the preference recipient pays the amount for which he is "liable" under 11 U.S.C. 550. See 11 U.S.C. 502(d); Max Sugarman ____________ Funeral Home, Inc. v. A.D.B. Investors, 926 F.2d 1248, 1257 (1st ___________________ ________________ Cir. 1991). Once the preference recipient complies with the payment or turnover order of the bankruptcy court, it may file a proof of claim. See Sugarman, 926 F.2d at 1257; see also In re ___ ________ ________ _____ First Intern. Services Corp., 37 B.R. 856, 860 (Bankr. D. Conn. ____________________________ 1984) ("Pursuant to 11 U.S.C. 502(d), claims of creditors who have received void or voidable transfers must be disallowed unless the creditor surrenders the money or property transferred during the preference period."). The key phrase in this inquiry is "the amount . . . for which such entity or transferee is liable . . ." 11 U.S.C. 502(d). The difficulty with application of the term "liable" namely is that there are two court actions which determined that the preference recipient is liable, the judgment of the District Court and the Order of the Bankruptcy Court approving the settlement of the preference claim. The unsecured creditors argue that the legislative history of Section 502(d) is relevant to this inquiry. The ambiguity is not clarified by reference to the legislative history. In part, that history states: "Subsection (d) . . . requires disallowance of a claim of a transferee of a voidable transfer in toto if the transferee had not paid the amount or ________ -13- turned over the property received as required under the sections under which the transferee's liability arises." H.R. Rep. No. 95-595, at 354 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 6310 (emphasis added). The petitioning unsecured creditors argue that the inclusion of the words "in toto" indicates that Congress intended that a creditor must relinquish the original preference amount, precluding any judicial adjustment of this figure. They also cite a North Dakota Supreme Court case as support for this proposition that a creditor must surrender all sums previously ___ transferred. See North Dakota Public Service Com'n v. Central ___ __________________________________ _______ Sales Grain, Inc., 371 N.W.2d 767, 780 (N.D. 1985) (emphasis __________________ added). This opinion considered a state insolvency proceeding brought against a grain warehouseman. The court concluded that the claim of a creditor should be denied because the creditor had received a vaculator machine1 as a preferential transfer and had not returned it. The creditor claimed that he had "since" paid for the machine (apparently after the record was closed in the proceedings below). The court stated that the creditor could bring an appropriate motion for relief after its mandate issued. Although there is an obvious difference between the return of a  ____________________ 1 Although the term 'vaculator' is used sometimes to describe surgical devices for the removal of fluid from the human body and the like, in this context a 'vaculator machine' describes a system used to extract grain from containers and transfer it to other storage facilities. See Bunge Corp. v. American Commercial ___ ___________ ___________________ Barge Line Co., 630 F.2d 1236, 1241 (7th Cir. 1980); Mercantile ______________ __________ National Bank of Chicago v. Quest, 303 F. Supp. 926, 928 (N.D. _________________________ _____ Ind. 1969).  -14- tangible piece of machinery which Section 502(d) would seem to require (although we do not now determine that issue) and the payment of all or part of a monetary sum, there is nothing in the court's opinion which supports the contention that an unsecured creditor may file a claim only if the judgment against the creditor for a preferential transfer of money is paid in full. The legislative history thus becomes pertinent to our analysis, even if it does not pinpoint a specific result. The unsecured creditors place emphasis upon the use of the term "in toto" in the House of Representatives historical record. What the unsecured creditors have overlooked is the fact that the term "in toto" refers to the unsecured claim of the recipient of a preferential transfer and not, as they would have it, the amount for which the transferee is liable. Thus, this legislative history does not clarify the purpose of Congress. We must ask, how would Congress have answered this question? Guided by the actual language used, we may look to the practical effect of the arguments made. See Dames & Moore v. ___ ______________ Regan, 453 U.S. 654, 673-74 (1981); Chapman v. Houston Welfare _____ _______ ________________ Rights Org., 441 U.S. 600, 616 (1979). There is guidance in the ___________ cogent language used by the Bankruptcy Court that to accept the unsecured creditors' contentions would rob post-judgment settlements of their "essential vitality." See In re Melon ___ _____________ Produce, 162 B.R. at 388. It is an unfortunate axiom that a _______ judgment does not always guarantee collection. Indeed, the easiest judgment to obtain is usually one that will never be -15- paid. The circumstances of the settlement with Karger suggest that collection of the full amount could have been an impossible task and could have involved the estate in lengthy, expensive litigation to the detriment of the unsecured creditors.  Thus a construction of the statute which requires the last penny to be paid could cause the unsecured creditors to, in effect, submit to an all-or-nothing situation. The petitioning unsecured creditors' argument would preclude half or any part of the loaf from being satisfactory, thereby preventing the bankrupt estate from being at least partially nourished. The purpose ought to be to encourage the collection of the largest amount possible to provide a dividend or a better dividend to the unsecured creditors. Experience suggests that few unsecured creditors can expect satisfaction of their claims in whole or in substantial part. More than two decades ago it was reported that unsecured creditors in business bankruptcies receive an average of 8% of the amounts proved and allowed, while general creditors in personal bankruptcies receive an average of 7% of their allowed claims. See David Stanley & Marjorie Girth, Bankruptcy: Problem, ___ ____________________ Process, Reform 130 (1971). There is nothing to signify that _______________ there has been any recent substantial improvement in the extent of the recoveries of unsecured creditors. The Administrative Office of the U.S. Courts reports a higher average dividend in Chapter 11 reorganization cases - 32% - but that figure includes both the amounts actually paid and the amounts that debtors -16- promised to pay after the reorganization case was closed. See ___ Admin. Office of the U.S. Cts., Tables of Bankruptcy Statistics A-32 (1978). However, the latter may be merely paper obligations which may be discounted again in a recurrence of the debtor's financial difficulties. See id. Despite the lack of any recent ___ ___ empirical studies, certainly it is safe to expect that in almost every bankruptcy unsecured creditors are likely to receive only a small percentage of their legitimate claims. The estate is protected against manipulation because settlements must be approved by the Bankruptcy Court after a consideration of the circumstances of the settlement. Approval is a discretionary function and may be reviewed for abuse. Hence, a small settlement which results in a substantial dividend to the preferential transferee is not likely to pass muster. Finally, this result is consistent with the overall purpose of Section 502, which was not "to punish, but to give creditors an option to keep their transfers (and hope for no action by the trustee) or to surrender their transfers and their advantages and share equally with other creditors." Tidwell v. _______ Atlanta Gas Light Co. (In re Georgia Steel, Inc.), 38 B.R. 829, ___________________________________________________ 839 (Bankr. M.D. Ga. 1984). Karger chose the latter option and paid $400,000 to the Trustee. If faced with the option of paying the full amount of the judgment in order to file his claim as an unsecured creditor (apart from whether or not he had the wherewithal to do so), the result might well have been a lengthy and only partially successful or even an unsuccessful effort to -17- obtain satisfaction of the judgment in full. The expenses incurred to collect the judgment in full or in part could have diminished the return to the estate to less than $400,000. The practical effect of the position advocated by the petitioning unsecured creditors compels us to conclude that Congress did not intend that unsecured creditors be denied their claims, if having received a preferential transfer, they do not satisfy a judgment arising out of the transfer in full and with interest. We believe that Congress intended some play in the joints and that a court-approved settlement of such a judgment satisfies the requirement that the preferential transferee has paid that for which he is liable. We therefore agree with the Bankruptcy Court. We hold that pursuant to Section 550(a)(1) Karger was liable for the sum of $400,000 and therefore his unsecured claim was properly allowed.  B. Equitable Subordination B. Equitable Subordination The ultimate ruling of the Bankruptcy Court was that the unsecured creditors were barred by the approval of the settlement between Karger and the Trustee. Bankruptcy Court Rule 9019 requires notice to interested parties prior to approval of a settlement. See 11 U.S.C. Part IX, Rule 9019(a). The rule was ___ complied with since the petitioning unsecured creditors had notice of and did in fact appear and object to the proposed settlement. The unsecured creditors vigorously pressed their argument that Karger's unsecured claim should be subordinated to -18- their unsecured claims. The Bankruptcy Court approved the settlement which included a provision that "the Trustee shall not object to the allowance of Karger's unsecured claim in the amount of $400,000." The unsecured creditors did not appeal from the approval of the settlement agreement between the Trustee and Karger. Although the Bankruptcy Judge stated that the petitioning unsecured creditors could ask for a later hearing on the equitable subordination issue, this statement was in error. Counsel should not take such a prediction by a judge as gospel, but should act diligently to protect the record and his or her client's right to appeal. See Morrissey v. Nat'l Maritime ___ _________ ______________ Union of America, 544 F.2d 19, 32 (2d Cir. 1976) ("While counsel ________________ seeks to excuse [the failure to make an offer of proof] on the basis of the judge's statement on the telephone . . . this did not relieve counsel of his duty to protect the record."). Counsel must not rely upon the judge to make the case for him or her. As observed in Marshak v. Tonetti, "[j]udges from time to _______ _______ time will make mistakes. Parties should not sit idly by, failing to point out relevant authority and then hope for redress on appeal." Marshak v. Tonetti, 813 F.2d 13, 17 (1st Cir. 1987). _______ _______ If the equitable subordination issue was to be considered at all, it should have been addressed at the time of the settlement. Otherwise, there is no reason for a settlement, since the settling parties are neither protected from further unfavorable consequences nor allowed to enjoy the safe harbor of their settlement arrangement. -19- Furthermore, the principles of res judicata dictate that the petitioning unsecured creditors should not be permitted to bring this issue on appeal. "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Allen v. McCurry, 449 U.S. 90, 94 _____ _______ (1980), citing Cromwell v. County of Sac, 94 U.S. 351, 352 ________ ______________ (1876); see also Montana v. United States, 440 U.S. 147 (1979). ________ _______ _____________ In this case, the fate of the petitioning unsecured creditors' equitable subordination claim is affected by the fact that they were in privity with the Trustee. In In re Medomak Canning, this court discussed the _______________________ standard by which the relationship between a trustee in bankruptcy and a creditor should be evaluated. A trustee in bankruptcy is a fiduciary representing the estate and creditors. In re Medomak Canning, 922 F.2d at 901, citing In re Thu Viet ______________________ _______________ Dinh, 80 B.R. 819, 822 (Bankr. S.D.Miss. 1987). Privity may be ____ established by identification of interests, even where representation of those interests is not authorized. In re _____ Medomak Canning, 922 F.2d at 901, citing Meza v. General Battery ________________ ____ _______________ Corp., 908 F.2d 1262, 1267 (5th Cir. 1990). _____ Since the petitioning unsecured creditors had notice of the hearing on the approval of the settlement agreement, and since they participated and argued the issue, and since the issue they now press was considered although incorrectly passed over, their failure to appeal thereafter is fatal to their present -20- appeal. The finality of court-approved settlements such as this one is important, especially to the efficient administration of the estate and to reassure settling parties that the trustee will not relitigate the settled claims. See In re Medomak Canning, ___ ______________________ 922 F.2d at 901.  The Trustee is ordinarily the appropriate party to seek equitable subordination on behalf of the estate and unsecured creditors. In re Medomak Canning, 922 F.2d at 902. As unsecured _____________________ creditors, appellants could not in these circumstances evade the responsibility of looking to the Trustee in the first instance as their fiduciary and representative to vindicate their interests, including even their interest in pursuing equitable subordination. Id. In this case, the Trustee chose not to __ petition the court for equitable subordination of Karger's claim and that choice was approved by the Bankruptcy Court. Because the Trustee was acting for the petitioning unsecured creditors, they are bound by the Trustee's actions. The principles enunciated in In re Medomak Canning, 922 F.2d 895, are _________________________ controlling. Therefore, the petitioning unsecured creditors' equitable subordination claim is barred by the principles of res judicata. III. CONCLUSION III. CONCLUSION -21- We affirm the District Court's judgment as to the disallowance of Karger's claim and the dismissal of the petitioning unsecured creditors' appeal by the District Court. Affirmed.  ________ -22-