**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **R.W.**

**No. 21-0626** (Braxton County 21-JA-9)

**MEMORANDUM DECISION**

Petitioner Mother D.H., by counsel Daniel K. Armstrong, appeals the Circuit Court of Braxton County's July 6, 2021, order terminating her parental rights to R.W.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Julia R. Callaghan, filed a response on behalf of the child in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

As petitioner previously appealed her adjudication as an abusing parent, she alleges error in regard to a narrow issue in the current appeal. As such, it is unnecessary to undertake an extended recitation of the facts in this matter. Instead, given that petitioner only challenges the ultimate termination of her parental rights, it is sufficient to set forth the following: After the DHHR filed multiple abuse and neglect petitions alleging that petitioner engaged in domestic violence in the child's presence and failed to protect her other child, three-year-old K.H., who died in his father's home, petitioner was adjudicated of abusing and neglecting R.W. in May of 2021. Petitioner's adjudication was based on her history of extensive domestic violence in the child's

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

presence and her failure to acknowledge any wrongdoing or abuse and neglect, especially in regard to the death of K.H., which occurred at a time that then one-year-old R.W. was also in the home. Relevant to the current issue on appeal, the evidence below established that petitioner was aware of the father's violent nature, including toward the deceased child, as petitioner even reported the issue to law enforcement prior to the child's death. Further, petitioner admitted in her testimony to taking inadequate steps to protect the children from the father or otherwise remove the children from the dangerous conditions presented. A medical professional testified that several of K.H.'s injuries could have been fatal in and of themselves, and opined that the injuries to the child were a result of severe child abuse. Testimony also established that petitioner permitted R.W.'s grandfather to exercise custody of the child, despite the fact that his parental rights to his own children—including petitioner—had been terminated. It is also important to note that the circuit court found petitioner's credibility following adjudication to be entirely lacking.

The circuit court held a dispositional hearing in June of 2021, during which a psychologist who performed petitioner's psychological evaluation testified. The psychologist explained that petitioner failed to accept any responsibility during the proceedings. The psychologist stated that she assigned petitioner the worst possible prognosis for improved parenting, extremely poor to nonexistent. The psychologist testified that her prognosis was new since she released the psychological evaluation report. She explained that at the time of petitioner's initial evaluation, she had given a guarded prognosis for improved parenting. However, the psychologist explained that after petitioner attempted to defend the father at the adjudicatory hearing and failed to accept responsibility for her actions, the psychologist updated the prognosis to extremely poor to nonexistent. The psychologist further noted that petitioner should never have access to any children in the future.

Next, a CPS worker testified that although petitioner was participating in services, she had failed to admit to any wrongdoing and did not maintain fit and suitable housing. The worker also explained that petitioner's poor decision making was a danger to R.W. The worker noted that there were no services that could be offered to petitioner to overcome the circumstances that led to the petition given that she failed to take responsibility during the proceedings.

Petitioner presented a service provider who testified that petitioner had positive interactions during her visits with R.W. However, under questioning, the provider acknowledged that petitioner missed at least two visits because petitioner allegedly slept through her alarm. Finally, petitioner testified and acknowledged that she had missed two visits with the child after sleeping through alarms. Petitioner also admitted that she received a call at 5:30 a.m. on February 2, 2021—the day of K.H.'s death—from the father who made a disturbing, violent statement about an imaginary individual. Petitioner acknowledged that she was working at the time of the call and never left work to check on the children. Petitioner continued to deny wrongdoing and maintained that her "poor judgment" was the only thing that she "may have done wrong" in the case.

After hearing the evidence, the circuit court found that petitioner failed to demonstrate she would fully participate in an improvement period, if granted one, and that there were no services that could be provided to her to overcome the conditions that led to the filing of the petition.

2

Accordingly, the circuit court terminated petitioner's parental rights to the child.[2] It is from the July 6, 2021, dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in terminating her parental rights based on her decision to allow the children's grandfather to supervise the children.[3] Petitioner argues that the DHHR failed to call a single witness who testified that petitioner was ever informed that she could not allow the grandfather to supervise the children. She contends that no one explained any terms or conditions related to the grandfather's prior termination of parental rights to his own children and that there was no evidence that she had any knowledge that his prior termination of parental rights should have impacted his fitness to supervise the children.

Having reviewed the record, we find that sufficient evidence existed to terminate petitioner's parental rights. While petitioner claims that she did not know that the grandfather could not supervise the children, she does not dispute having knowledge that his parental rights were previously terminated. Further, her testimony reflects that she understood that the grandfather had been found by a circuit court to be unsafe to parent his children—including her. Nevertheless, petitioner chose to allow the grandfather to serve as a caregiver for her children on a regular basis, based upon a personal assessment that he had changed. Although there is no evidence that the grandfather perpetrated acts of abuse or neglect against petitioner's children, petitioner's choice to place the children in her father's care, despite his history of abuse and neglect, threatened the children's safety and wellbeing. Further, the DHHR demonstrated, by clear and convincing

---

[2]The father's parental rights were also terminated below. The permanency plan for the child is adoption by his current foster parents.

[3]Petitioner also argues that it was error to adjudicate her as an abusing parent. However, because petitioner previously raised this argument in her prior appeal, it is unnecessary to address this issue herein.

evidence, that petitioner knew or should have known that the grandfather was an inappropriate caregiver for the children and that his prior termination of parental rights placed the children at risk for abuse and neglect.

Next, petitioner argues that the circuit court erred in terminating her parental rights based upon exposure of the children to domestic violence. This argument, however, is not appropriate for review, as it, in actuality, is yet another attack on her adjudication. Although couched in terms of termination of her rights, the ultimate point of this argument is that petitioner alleges that she was not exposing R.W. to domestic violence when the instant petition was filed in February of 2021. Because we previously found petitioner's adjudication to be appropriate, including upon the evidence that she exposed the children to domestic violence, she is not entitled to raise this issue on appeal yet again. This Court has previously recognized that "'[a] court on notice that it has previously decided an issue may dismiss the action *sua sponte*, consistent with the *res judicata* policy of avoiding judicial waste[.]' *Bezanson v. Bayside Enterprises, Inc.*, 922 F.2d 895, 904 (1st Cir. 1990)." *Gulas v. Infocision Mgmt. Corp.*, 215 W. Va. 225, 229 n.4, 599 S.E.2d 648, 652 n.4 (2004).

Next, petitioner argues that the circuit court erred in terminating her parental rights based on her failure to admit any wrongdoing or culpability. Petitioner notes that the DHHR has the burden of proof, under West Virginia Code § 49-4-601(i), to prove conditions of abuse and neglect by clear and convincing evidence. Petitioner contends that the circuit court shifted the burden of proof onto her by finding that she failed to take any responsibility for the death of K.H. as to the finding of abuse for R.W. We find petitioner's arguments unavailing.

Here, while recognizing that "[t]he burden of proof in a child neglect or abuse case does not shift from the State Department of [Health and Human Resources] to the parent, guardian or custodian of the child," we nonetheless find that such shifting did not occur below. Syl. Pt. 4, in part, *In re K.L.*, 233 W. Va. 547, 759 S.E.2d 778 (2014) (citation omitted). As set forth above, the DHHR presented overwhelming evidence that petitioner knew or should have known that the father was not a safe caregiver for the children. Petitioner testified that the father committed several acts of domestic violence in the presence of the children, had anger management issues, and had violent tendencies. Further, petitioner admitted that on at least one occasion, the father smacked K.H., in her own words, "too hard." Petitioner further testified that mere loud noises, including from the children, caused the father to become angry and violent. Petitioner also documented that the father failed to take responsibility for domestic violence in their relationship, blaming many incidents on an apparition which he named "Fire Face." Petitioner also allowed the children's grandfather, whose parental rights were previously terminated, to supervise the children and minimized her actions by claiming that she did not know that he should not be around the children. Thus, while the circuit court did find that petitioner "denied any wrongdoing" during the proceedings, there is no evidence that the court used petitioner's lack of admission to abuse and neglect as a basis for her terminating her parental rights.

Finally, petitioner argues that the forensic psychologist improperly "downgraded her prognosis" for achieving minimally adequate parenting based on the mistaken belief that petitioner

4

had defended the father when she contends that she testified otherwise. Petitioner asserts that the forensic psychologist changed her prognosis after reading the circuit court's findings in its adjudicatory hearing order "and not an actual examination of the testimony provided at the hearing via a transcript or first-hand knowledge of what was said." Petitioner argues that the circuit court, in turn, erred in terminating her parental rights based, in part, on the change in the forensic psychologist's prognosis. We find petitioner's argument without merit.

On appeal, petitioner presents no evidence that her parental fitness evaluation failed to provide the circuit court with accurate information regarding her ability to parent or whether she addressed the allegations of the father's physical abuse. Petitioner's downgraded prognosis was based upon a finding by the circuit court that petitioner was not a credible witness and that she minimized the father's violent nature during her adjudicatory hearing testimony. While petitioner argues that she did not defend the father in her testimony throughout the proceedings, she ignores the fact that the circuit court resolved this credibility determination against her. We decline to disturb this finding on appeal. *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). The psychologist's consideration of the circuit court's assessment of petitioner's testimony alongside other information—including her own interview of petitioner and the records provided to her—was appropriate. The fact that such additional information caused the psychologist to downgrade petitioner's prognosis for achieving minimally adequate parenting is not erroneous or prejudicial to petitioner when it accurately reflected her testimony. Accordingly, the circuit court did not err in considering the psychologist's revised recommendation when it terminated petitioner's parental rights.

Moreover, this evidence supports findings that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of parental rights was necessary for the welfare of the child. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon these findings. Clearly, petitioner presented a danger to the child if in her custody. Additionally, "we find that adoption, with its corresponding rights and duties, is the permanent out-of-home placement option which is most consistent with the child's best interests." *State v. Michael M.*, 202 W. Va. 350, 358, 504 S.E.2d 177, 185 (1998). The circuit court's termination of petitioner's parental rights to R.W. was necessary to facilitate adoption for the child. As such, it is clear that termination of petitioner's parental rights was necessary to provide permanency for the child and, therefore, necessary for his welfare. Further, we have long held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

5

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error in the circuit court's order terminating petitioner's parental rights without the imposition of a lesser-restrictive alternative.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 6, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: February 1, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton